MELODY E. WHEELER,

        Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

No. 17-CV-4038-LTS

**REPORT AND RECOMMENDATION**

_____

      The claimant, Melody E. Wheeler (claimant) seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining she was not disabled.

      For the reasons that follow, I recommend the District Court **affirm** the Commissioner's decision.

## I.    BACKGROUND

      Claimant was born in 1987, and was 28 years old at the time of the Commissioner's decision. (AR 108, 217).[1] Claimant completed three years of college and has past

---

[1] "AR" refers to the administrative record below.

experience working as a sales attendant, youth counselor, front desk clerk, driver, and cashier. (AR 287; Doc. 14, at 3).

On December 13, 2013, claimant applied for disability benefits, alleging disability due to radiculitis that she claimed caused her to lose feeling in her legs. (AR 186, 198, 222). The Commissioner denied claimant's application initially, and upon reconsideration. (AR 114, 122, 126). On January 21, 2016, the ALJ held a hearing at which claimant and Stephen Schill, an impartial vocational expert, testified. (AR 10-46). On February 26, 2016, the ALJ found claimant was not disabled. (AR 90-108). On March 29, 2017, the Appeals Council denied claimant's request for review. (AR 1-6). The ALJ's decision, thus, became the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On May 30, 2017, claimant filed a complaint in this Court. (Doc. 3). The parties have briefed the issues, and on December 19, 2017, the Honorable Leonard T. Strand, Chief United States District Judge, referred this case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If the claimant is able to do work which exists in

the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves significant mental or physical activities. "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having the ability and aptitude necessary to perform most jobs. These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is

considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his/her past relevant work. If the claimant can still perform past relevant work, then the claimant is considered not disabled. Past relevant work is any work the claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. A claimant's "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks and citations omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. At Step Five, the Commissioner has the responsibility of developing the

4

claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and the claimant is not disabled.

### III.   THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in his written decision.

At Step One, the ALJ found claimant had not engaged in substantial gainful activity since April 26, 2013. The ALJ noted that claimant worked after the alleged disability onset date, but that the work did not rise to the level of substantial gainful activity. (AR 93).

At Step Two, the ALJ determined claimant had the following severe impairments: "pain complaints from childbirth and obesity." (*Id*.).

At Step Three, the ALJ concluded that claimant did not have an impairment or combination of impairments that met or medically equaled in severity one of the listed impairments. (AR 93-94).

At Step Four, the ALJ determined claimant's RFC. The ALJ found that "claimant has the residual functional capacity to perform light work . . . i.e., she can lift and carry 20 pounds occasionally and ten pounds frequently; sit two hours in an eight-hour workday; stand six hours in an eight-hour workday; and walk six hours in an eight-hour

workday." (AR 94). The ALJ also found claimant "could occasionally climb, balance, stoop, kneel, crouch, and crawl" and "use her hands for frequent handling, fingering, and feeling." (*Id.*). The ALJ noted that claimant did not allege any mental impairments. (*Id.*).

Based on this RFC assessment, at Step Five, the ALJ determined that, although claimant had no past relevant work, there were jobs in significant numbers in the national economy that the claimant could perform, including mail clerk, office helper, sorter, sales attendant, cashier, addresser, document preparer, and call out operator. (AR 106-107). The ALJ concluded, therefore, that claimant was not disabled. (AR 108).

### IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

A court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 542 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the

6

evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (internal citation omitted)).

## V. DISCUSSION

Claimant alleges the ALJ committed reversible error in assessing claimant's RFC because (1) the RFC analysis was not supported by substantial medical evidence from a treating or examining source (Doc. 12, at 4–8); and (2) the ALJ discounted claimant's subjective allegations without identifying inconsistencies in the record as a whole. (Doc. 12, at 8–16). Claimant also argues that the Court should remand the case for consideration of new and additional evidence of Chronic Inflammatory Demyelinating Polyneuritis (CIDP). (Doc. 12, at 17–21). I will address each of these issues in turn.

### A. *Whether the ALJ Erred in Assessing Claimant's RFC*

Claimant argues the ALJ erred in determining claimant's RFC because the RFC was not supported by substantial medical evidence from a treating or examining source. (Doc. 12, at 4-8). I find that the ALJ properly accounted for claimant's impairments in structuring claimant's RFC limitations and that the RFC assessment is supported by substantial evidence on the record as a whole.

An ALJ has a duty to fully and fairly develop the record, even when, as here, the claimant is represented by counsel. *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citing *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983)). This duty includes "arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." 20 C.F.R. § 416.945(a)(3). "Because the social security disability hearing is non-adversarial . . . the ALJ's duty to develop the record exists independent of the claimant's burden in the case." *Stormo*, 377 F.3d at 806 (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)).

> Where, as here, the ALJ finds that a claimant is unable to perform any past relevant work, the burden shifts to the Commissioner to show that

8

there is other work that the claimant can do, given the claimant's RFC and his or her age, education, and work experience. *Bladow*, 205 F.3d at 358–59 n.5. As a general rule, the Commissioner cannot make such a showing without opinion evidence from a treating or examining source. *Nevland*, 204 F.3d at 857-58. In *Nevland*, the Eighth Circuit Court of Appeals stated:
In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id*. In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity. As this Court said in *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975): "An administrative law judge may not draw upon his own inferences from medical reports. *See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974); *Willem v. Richardson*, 490 F.2d 1247, 1248–49 n. 3 (8th Cir. 1974)."

*Id*., at 858 (emphasis in original).

Nervertheless, the holding in *Nevland* "does not compel remand in every case in which the administrative record lacks a treating doctor's opinion." *Morrow v. Berryhill*, No. C16-2023-LTS, 2017 WL 3581014, at *7 (N.D. Iowa Aug. 18, 2017) (citation and internal quotation marks omitted). The Court may affirm the ALJ's decision, even without an opinion from a treating or examining source, if there is other medical evidence demonstrating the claimant's ability to function in the workplace. *Id*.; *see also Agan v. Astrue*, 922 F. Supp.2d 730, 756 (N.D. Iowa 2013). "The question is whether there is

sufficient evidence of 'how [the claimant's] impairments . . . affect [her] residual functional capacity to do other work,' or her 'ability to function in the workplace.'" *Morrow*, 2017 WL 3581014, at *7 (quoting *Hattig v. Colvin*, No. C12–4092 MWB, 2013 WL 6511866, at *11 (N.D. Iowa Dec. 12, 2013)). In the end, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013) (affirming RFC without medical opinion evidence), and *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012) (same)).

In this case, the ALJ examined in significant detail the medical evidence pertaining to claimant's alleged disability. In short, in the spring of 2013, claimant gave birth to a child and during the procedure received an epidural anesthetic. (AR 98). Following the birth, claimant complained of losing feeling in her legs. (AR 97). EMG and CT scans at the time and over the course of the following two years were all normal. (AR 98-103). Dr. Franco, a neurologist, opined that her condition may have been due to a chemical irritation from the epidural anesthetic, or from the procedure, or it may have been a "functional disorder," meaning a mental disorder. (AR 98, 101). Whatever the cause, Dr. Franco predicted a gradual but complete recovery. (AR 98). The medical records as summarized by the ALJ show such a recovery. Over the course of the following three years, claimant gained back full strength in her legs and full range of motion. (AR 98-103). She apparently continues to have decreased sensation in her legs, but she has never complained of any pain. (*Id.*). Significantly, no treating or examining source has ever endorsed any type of work-related limitations. The ALJ gave great weight to all of the treating and examining sources. (AR 105). The ALJ also gave "greater weight" to the State agency medical consultants who concluded that claimant's limitations were not severe. (*Id.*).

10

Upon my own review of the ALJ's decision and the medical records, I believe there is substantial evidence on the record as a whole to support the ALJ's RFC assessment. The medical records simply contain no support for any work-related limitations related to claimant's complaints. Moreover, her daily activities do not suggest that she is severely limited as a result of her condition. Claimant shops, walks, cooks, attends social events, cares for three minor children and three dogs, and cleans the house. (AR 105). Here, the ALJ assessed claimant's RFC as limited to light work, which is consistent with the medical evidence.

I recognize that silence by treating sources regarding work-related limitations does not itself constitute substantial evidence. *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011). Here, however, the ALJ relied on medical evidence in the record showing no functional limitations. As noted, multiple examinations showed that claimant had full range of motion and full strength in her legs. All MRI and CT scans showed normal conditions. Claimant has never complained of pain in her legs.

Citing this Court's decision in *Morris v. Colvin*, C14-4068-LTS, 2016 WL 3360506 (N.D. Iowa June 16, 2016), claimant argues that this Court recently noted that when an ALJ assesses work-related limitations, those limitations must ordinarily come from a treating or examining source. (Doc. 12, at 5). Claimant acknowledges, however, that other records could provide this information and it need not come from a treating or examining source. The problem the Court noted in *Morris* was that, "[w]hile the record contains treatment notes and other records reflecting that Morris received care for his impairments . . . those records do not answer the critical question of how those impairments affect his ability to function in the workplace." 2016 WL 3360506, at *10. In this case, however, the medical records show that claimant's impairment of lack of

11

sensation in her legs caused no physical limitations on her ability to walk, sit, or stand, that her range of motion was normal and her leg strength full.

Finally, claimant argues that the ALJ had an obligation to develop the record by ordering a consultative examination where, as here, no treating or examining source rendered an opinion regarding work-related limitations. (Doc. 12, at 8). An ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo*, 377 F.3d at 806. An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped or underdeveloped, and should order consultative exams if the medical records do not provide sufficient medical evidence to determine whether the claimant is disabled. *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010). The regulations make clear, however, that a consultative exam should only be used to "try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision." 20 C.F.R. § 416.919a(b). The Eighth Circuit Court of Appeals has held an ALJ is required to order a consultative exam only if the evidence of record does not provide an adequate basis for determining the merits of a disability claim. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). *See also Tellez v. Barnhart*, 403 F.3d 953, 956–58 (8th Cir. 2005) (rejecting argument that ALJ failed to fully and fairly develop the record where there was no indication that the ALJ was unable to make RFC assessment). Further, the ALJ is under no duty to provide continuing medical treatment and supervision for claimant, despite the duty to develop the record fully. *See Baldwin*, 349 F.3d at 558.

Here, as I have noted, there was medical evidence that provided an adequate basis for the ALJ to determine the merits of claimant's disability claim. Therefore, the ALJ did not err in not ordering a consultative examination for the purpose of eliciting an

12

opinion regarding work-related limitations. Furthermore, claimant has demonstrated no prejudice or injustice as a result of this alleged failure to develop the record. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary for a reversal due to failure to develop the record). Claimant has not pointed to any evidence that would suggest that any of her treating or examining sources, or any consultative source, would assign work-related limitations were the Court to remand the case and order such an evaluation. It is, in the end, a claimant's obligation to prove her RFC. *Baldwin*, 349 F.3d at 556.

In summary, I find that substantial evidence in the record as a whole supported the ALJ's RFC assessment.

### *Whether the ALJ Erred in Discounting Claimant's Credibility*

The ALJ found claimant was not a credible source regarding the intensity, persistence, and functionally limiting effects of her impairments. (AR 96). Claimant argues that without medical opinions from a treating or examining source, her "subjective allegations become the primary issue in her claim." (Doc. 12, at 8). Claimant asserts that the ALJ's assessment of her credibility regarding her subjective complaints was tainted by the ALJ's error in failing to obtain work-related limitations from a treating or examining source. (*Id.*, at 9). Claimant further asserts that the ALJ erred in concluding there was no physical reason for claimant's use of a cane. (*Id.*, at 9-14). Claimant further alleges the ALJ erred in discounting claimant's subjective complaints of fatigue and sensory deprivation in her hands that kept her from washing dishes. (*Id.*, at 14-15). Finally, claimant points out that the ALJ did not cite to *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), and argues the ALJ did not conduct a *Polaski* analysis or point out inconsistencies between claimant's subjective complaints and the record as a whole. (AR 15-16).

13

When rejecting a claimant's subjective complaints, an ALJ must make an express credibility determination, detailing the reasons for discrediting the subjective complaints, set forth any inconsistencies upon which the ALJ made that determination, and discuss the factors set forth in *Polaski*. *Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998). In *Polaski*, the Eighth Circuit Court of Appeals directed that an ALJ is to consider all of the evidence presented relating to subjective complaints. These include "the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski*, 739 F.2d at 1322. The *Polaski* Court further admonished that ALJs "may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Id*.

Here, the ALJ explained in significant detail the basis for his credibility determination. Although the ALJ did not specifically cite to the *Polaski* case, he nevertheless discussed the required relevant factors. Nothing more is needed. *See Myers*, 721 F.3d at 527 (holding the ALJ "was not required to discuss each factor's weight in the credibility calculus"). *See also, e.g.*, *Randolph v. Barnhart*, 386 F.3d 835, 841-42 (8th Cir. 2004) (holding that an ALJ need not explicitly or methodically discuss each *Polaski* factor); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (same); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (same); *Wheeler v. Apfel*, 224 F.3d 891, 895 n.3 (8th Cir. 2000) (same).

The ALJ summarized claimant's subjective complaints and testimony. (AR 95-96). The ALJ reviewed in detail claimant's medical treatment and noted her slow improvement and, importantly, examinations showing that by 2014, claimant had a

14

normal gait and full range of motion and strength in her legs. (AR 96-103). The ALJ noted that all MRIs, EMG, CT scans and nerve conduction studies had essentially normal results. (AR 103-104). The ALJ found claimant consistently denied any pain; the only references to claimant ever suffering pain were during the administration of the epidural (AR 102) and neck pain on one occasion in April 2014 (AR 100). The ALJ noted that none of claimant's treating or examining physicians imposed any work-related limitations. (AR 103). The ALJ concluded that claimant's testimony that she could not return to work because of short-term memory loss was inconsistent with the medical records. (AR 104). The ALJ noted that claimant's answers in a Personal/Fatigue Questionnaire completed in May 2014, reflected that she could lift 15 pounds, walk or stand for 15 to 20 minutes, and was "not bothered by sitting." (AR 104). The ALJ considered claimant's daily activities, including her walks around the block three times "with assistance," routine housework, grocery shopping, and taking care of children and dogs, while noting that her description of her daily activities were inconsistent. (AR 104-105). The ALJ reviewed claimant's work history, noting that her report of her work history was inconsistent with the records, and that she worked only part-time jobs. (AR 104). Finally, the ALJ noted that claimant mentioned considering medical malpractice litigation and switching to a new medical clinic, telling the personnel there that she was applying for disability. (*Id.*; *see also* AR 83-84). The ALJ properly considered this behavior and motivation in assessing claimant's credibility. *See Eichelberger*, 390 F.3d at 589-90 (holding that an ALJ may consider motivation for secondary gain in assessing credibility).

There is nothing in the medical records reflecting that any medical provider prescribed or recommended either a walker or a cane. The only evidence in the record is that for a short time after the birth of claimant's third child, she had some right-sided

15

footdrop where a walker or cane may have been of assistance. (AR 382). There is nothing in the record, however, that suggests that any medical provider ever prescribed either assistive device. *See Hillstrom v. Comm'r of Soc. Sec.*, No. 3:15-cv-40, 2016 WL 7507789, at *5 (D.N.D. May 24, 2016) (claimant's self-reports did not establish that she "required the use of any hand-held assistive devices"); *Johnson v. Astrue*, 816 F. Supp.2d 752, 773 (W.D. Mo. 2011) (finding claimant's contention that his physician ordered him to use a cane as an assistive device was not supported by the record when the record only reflected that claimant reported to a medical provider that another provider told claimant he needed to use a cane). Moreover, the ALJ's finding that there was no documentation supporting a "physical reason for [claimant's] alleged unusual loss of bilateral lower extremity sensation requiring a cane." (AR 103). Furthermore, the medical records show a slow but steady improvement in claimant's condition over the course of time. By 2014, claimant had a normal gait and full range of motion strength in both of her legs.

Regarding claimant's assertion of fatigue, muscle weakness and sensory deprivation in her hands, the only evidence she points to is her own testimony and her own subjective complaints made to medical providers. (Doc. 12, at 14-15). There are no medical records indicating claimant was ever treated for any of these conditions. More importantly, claimant fails to explain how these conditions are related to the ALJ's credibility findings. The ALJ did not mention claimant's fatigue, muscle weakness or sensory deprivation in claimant's hands in making his credibility determination.

In short, I find there was substantial evidence on the record as a whole to support the ALJ's decision to discount the weight given to claimant's description of the intensity, persistence, and functionally limiting effects of her impairments.

16

### C. Request for Remand

Claimant requests the Court remand this case for consideration of "new and additional evidence" of chronic inflammatory demyelinating polyneuritis (CIDP). (Doc. 12, at 17-21). Claimant argues she has new evidence not previously submitted that she has CIDP, an immune problem. (Doc. 12, at 18). That new evidence is not in the administrative record and was never considered by the ALJ or the Appeals Council. Rather, the information is contained only in an appendix attached to claimant's brief to this Court. (Doc. 12-1). Claimant acknowledges she was not diagnosed with CIDP during the time period under review, but argues she had symptoms during that time period that would be consistent with her having this condition. (Doc. 12, at 19). The treatment records upon which claimant makes this assertion are all dated after February 26, 2016, the date of the ALJ's decision.

In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council. *See Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999) (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)). The supplemental evidence here, however, was not submitted to or considered by the Appeals Council. Therefore, claimant must show that: (1) the evidence is new evidence; (2) the evidence is material evidence; and (3) there was good cause for the failure to incorporate the evidence into the record in a prior proceeding. *See Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997). For the evidence to be considered "material," that evidence must be from the relevant time period. *Id*. As noted by the Eighth Circuit, "[a]n implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern later-acquired disabilities or subsequent deterioration of a previously non-disabling condition." *Id*. In the situation where the medical records relate

17

to a new condition or to the deterioration of the claimant's condition after the relevant time period, the proper remedy for the claimant is to file a new application, not seek remand. Evidence obtained after an ALJ's decision is issued is material if it is related to the claimant's condition on or before the date of the ALJ's decision. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984).

The Commissioner does not dispute that the evidence is new. Nor does the Commissioner argue that there was not good cause for claimant's failure to incorporate the evidence into the record. Here, the diagnosis was not made until after the close of the record. The Commissioner argues, however, that the evidence is not material because it does not relate to claimant's condition during the relevant time period, and the new evidence does not, in any event, establish any work-related limitations.

I find that the new evidence arguably does relate to the period under review. According to the new evidence, the symptoms claimant experienced involving decreased sensation to her legs may be explained by the diagnosis reflected in the new evidence. I find that the new evidence is not material, however, because there is nothing in the new evidence that supports a conclusion that claimant has greater work-related limitations than those found by the ALJ. The new evidence, in my view, simply provides a diagnosis for claimant's symptoms. There is nothing in these new medical records that indicate that claimant was unable to perform light work under the conditions reflected in the ALJ's RFC. Nor is there anything contained in the medical records that should suggest a need to modify the ALJ's assessment of claimant's RFC. These records do not reflect an opinion by any medical source that claimant is, or was, unable to perform light work or was disabled during the time period under review. Therefore, I find that the new evidence would not lead the ALJ to have reached a different conclusion. Accordingly, I find that claimant has not established that she is entitled to remand pursuant to 42 U.S.C. § 405(g).

18

## VI. CONCLUSION

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the Commissioner's determination that claimant was not disabled and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 11th day of January, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa