# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| MELODY E. WHEELER, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | No. C17-4038-LTS <br><br> **ORDER ON REPORT AND RECOMMENDATION** |

_____

## I.   INTRODUCTION

This case is before me on a Report & Recommendation (R&R) by the Honorable C.J. Williams, Chief United States Magistrate Judge. Doc. No. 17. Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Melody Wheeler's application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, et seq. (Act).

Wheeler filed timely objections (Doc. No. 18) to the R&R on January 25, 2018. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II.   APPLICABLE STANDARDS

### A.   *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently."

*Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

B.  *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id*. The Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3D 803, 815 (8th Cir. 1994). As this court has previously stated, "[e]ven if the reviewing court must construe objections liberally to require *de novo* review, it is clear to this court that there is a distinction between making an objection and making no objection at all . . . ." *Lynch v. Astrue*, 687 F. Supp. 2d 841 (2010) (citing *Coop. Fin. Assoc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996)). This court will provide de novo review of all issues that might be addressed by any objection, but will review for clear error matters to which no objection at all has been made. *Id*.

### III. THE R&R

Wheeler alleged disability beginning April 26, 2013, due to radiculitis, which she claimed caused her to lose feeling in her legs. AR 54. An Administrative Law Judge (ALJ) determined Wheeler had impairments due to "pain complaints from childbirth and obesity" (AR 93) but ultimately found Wheeler not disabled. AR 108. Wheeler filed a complaint in this court on June 1, 2017, and Judge Williams filed his R&R on January 11, 2018.

In contending that the ALJ's determination was erroneous, Wheeler makes three arguments: (1) the ALJ's residual functional capacity (RFC) assessment was not

4

supported by substantial medical evidence from a treating or examining source, (2) the ALJ improperly discounted claimant's subjective allegations without identifying inconsistencies in the record as a whole and (3) the court should order remand to consider new evidence of a chronic inflammatory demyelinating polyneuritis (CIDP) diagnosis. With regard to the first argument, Judge Williams found that the RFC determination was supported by substantial evidence on the record as a whole. Doc. No. 17 at 8, 11. He noted that the RFC need not be supported by a specific medical opinion if it is supported by other medical evidence demonstrating the claimant's ability to function in the workplace. *Id.* at 9–11. Judge Williams found:

> In this case, the ALJ examined in significant detail the medical evidence pertaining to claimant's alleged disability. In short, in the spring of 2013, claimant gave birth to a child and during the procedure received an epidural anesthetic. (AR 98). Following the birth, claimant complained of losing feeling in her legs. (AR 97). EMG and CT scans at the time and over the course of the following two years were all normal. (AR 98-103). Dr. Franco, a neurologist, opined that her condition may have been due to a chemical irritation from the epidural anesthetic, or from the procedure, or it may have been a "functional disorder," meaning a mental disorder. (AR 98, 101). Whatever the cause, Dr. Franco predicted a gradual but complete recovery. (AR 98). The medical records as summarized by the ALJ show such a recovery. Over the course of the following three years, claimant gained back full strength in her legs and full range of motion. (AR 98-103). She apparently continues to have decreased sensation in her legs, but she has never complained of any pain. (*Id.*). Significantly, no treating or examining source has ever endorsed any type of work-related limitations. The ALJ gave great weight to all of the treating and examining sources. (AR 105). The ALJ also gave "greater weight" to the State agency medical consultants who concluded that claimant's limitations were not severe. (*Id.*).

*Id.* at 10. Because the existing medical evidence provided an adequate basis for the ALJ to determine the merits of the claim, Judge Williams held that the ALJ did not commit error by not ordering a consultative examination. *Id.* at 12.

As for Wheeler's second argument, Judge Williams found that the ALJ sufficiently explained the basis for his credibility determination. *Id.* at 14–15. He held that the

5

record as a whole supported the ALJ's decision to discount the claimant's description of intensity, persistence and functionally limiting effects of her impairments. *Id.* at 16. He stated:

> There is nothing in the medical records reflecting that any medical provider prescribed or recommended either a walker or a cane. . . . [T]here was no documentation supporting a "physical reason for [claimant's] alleged unusual loss of bilateral lower extremity sensation requiring a cane." (AR 103). Furthermore, the medical records show a slow but steady improvement in claimant's condition over the course of time. By 2014, claimant had a normal gait and full range of motion strength in both of her legs.
>
> Regarding claimant's assertion of fatigue, muscle weakness and sensory deprivation in her hands, the only evidence she points to is her own testimony and her own subjective complaints made to medical providers. (Doc. 12, at 14-15). There are no medical records indicating claimant was ever treated for any of these conditions. More importantly, claimant fails to explain how these conditions are related to the ALJ's credibility findings. The ALJ did not mention claimant's fatigue, muscle weakness or sensory deprivation in claimant's hands in making [her] credibility determination.

*Id.* at 15–16.

As for Wheeler's third argument, Judge Williams found no reason to remand for the consideration of new evidence. *Id.* at 18. He explained:

> According to the new evidence, the symptoms claimant experienced involving decreased sensation to her legs may be explained by the diagnosis reflected in the new evidence. I find that the new evidence is not material, however, because there is nothing in the new evidence that supports a conclusion that claimant has greater work-related limitations than those found by the ALJ. The new evidence, in my view, simply provides a diagnosis for claimant's symptoms. There is nothing in these new medical records that indicate that claimant was unable to perform light work under the conditions reflected in the ALJ's RFC. Nor is there anything contained in the medical records that should suggest a need to modify the ALJ's assessment of claimant's RFC. These records do not reflect an opinion by any medical source that claimant is, or was, unable to perform light work or was disabled during the time period under review. Therefore, I find that

6

the new evidence would not lead the ALJ to have reached a different conclusion.

*Id*.

Based on these conclusions, Judge Williams recommends that I affirm the ALJ's determination that Wheeler was not disabled. *Id*. at 19.

## IV. DISCUSSION

Wheeler objects to Judge Williams' findings that (1) the ALJ properly assessed her RFC, (2) the ALJ properly discounted her subjective allegations and (3) there is no need for remand to consider new evidence. As such, I will review those issues de novo.

### A. *The RFC Assessment*

Wheeler argues that the ALJ should have ordered a consultative evaluation because there were no treating or examining sources that discussed her work-related limitations. Doc. No. 18 at 3, 5, 8. She argues that silence cannot constitute substantial evidence to support the RFC determination. *Id*. at 5–6. She also contends that the medical records show she continued to have disabling limitations during the relevant time period. *Id*. at 3–5. She claims that the continued loss of sensation in her legs affected her ability to work and, in particular, affected her ability to stand and walk. *Id*. at 6–7.

The RFC is an administrative assessment of the claimant's physical or mental restrictions that may affect her capacity to complete work-related activities. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). The RFC is based on "all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own descriptions of [her] limitations." *Id*. (quoting *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009)). It is the ALJ's responsibility, not a physician's, to determine the RFC. *Id*.

However, because the RFC is a medical question, it must be supported by some medical evidence. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2012). "[T]he ALJ

7

should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002) (quoting *Hutsell v. Massanari*, 259. F.3d 707, 712 (8th Cir. 2001)). There must be some supporting evidence from a medical professional. *Id.* at 1024 (citing *Dykes v. Apfel*, 223 F.3d 865, 866–67 (8th Cir. 2000)). The RFC may be based on all the evidence in the record but need not be supported by a specific medical opinion. *Id.*; *Hensley*, 829 F.3d at 923.

If the record does not contain enough evidence to determine the impact of the claimant's impairment on her ability to work, failure to develop that record constitutes reversible error. *Byes v. Astrue*, 687 F.3d 913, 918 (8th Cir. 2012). The ALJ may not simply rely on her own inferences from medical reports about the claimant's functional ability. *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). Here, the ALJ found that Wheeler had:

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), i.e., she can lift and carry 20 pounds occasionally and ten pounds frequently; sit two hours in an eight-hour workday; stand six hours in an eight-hour workday; and walk six hours in an eight-hour workday. She could occasionally climb, balance, stoop, kneel, crouch, and crawl. She could use her hands for frequent handling, fingering, and feeling. There were no mental impairments alleged.

AR 94. In formulating this RFC, the ALJ relied on the state agency determination, Wheeler's own statements and the medical evidence of record. AR 94–103. The ALJ also noted that no opinions from treating or examining physicians imposed work-related restrictions or indicated that Wheeler had significant functional limitations. AR 103, 105.

Silence by treating sources on work-related limitations cannot itself constitute substantial evidence for an RFC determination. *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011). Wheeler argues that the ALJ explicitly relied on this silence to find that she was not disabled. Doc. No. 18 at 5. However, while the ALJ mentioned the fact

8

that no treating sources imposed work-related restrictions (AR 103, 104, 105), I do not agree that she explicitly relied on that silence to determine the RFC. The ALJ made a detailed accounting of the medical evidence in the record, summarizing how Wheeler's symptoms affected her ability to walk, sit and perform daily tasks.

The record need not "explicitly discuss work-related limitations, as long as the records describe the claimant's 'functional limitations with sufficient generalized clarity to allow for an understanding of how those limitations function in a work environment.'" *Figgins v. Colvin*, No. C13-3022-MWB, 2014 WL 1686821, at *9 (N.D. Iowa Apr. 29, 2014) (quoting *Cox v. Astrue*, 495 F.3d 614, 620 n.6 (8th Cir. 2007)). Based on my de novo review of the record, I find there is sufficient evidence to support the ALJ's RFC determination. For example, the medical evidence indicates that Wheeler's symptoms improved rather quickly such that she was able to walk with the assistance of a cane. Just after the onset date of April 26, 2013, Wheeler was unable to move her legs and complained of numbness and weakness. AR 407, 430. By the beginning of May she had retained her reflexes and could bear weight, but continued to have numbness and weakness. AR 388–89. She was ambulating well. AR 479.

By mid-May, she had an improved gait pattern and continued to ambulate well. AR 591–92, 594. In June 2013, treatment notes documented much improvement in muscle strength despite experiencing some numbness. AR 444–45, 581, 583, 649, 651. By July 2013 she had advanced from using a walker to using a cane. AR 611. In September her strength had improved but she still experienced difficulties with sensation. AR 635. She could ambulate independently and get up and down off of the table without difficulty and reported that pain does not affect her activities. AR 639, 711, 760.

Almost a year after her onset date, Wheeler was able to walk well with a cane and had normal range of motion and strength in her lower extremities. AR 620, 625. While Wheeler claimed that she had not improved, the doctors noted that her numbness gradually improved, she could walk and use stairs independently with a cane, she denied any pain and she had a normal gait. AR 788, 812–13, 861. In light of these records I

find that there is sufficient medical evidence to support the RFC. The ALJ did not err by not ordering a consultative evaluation.

## B. *The Credibility Finding*

Wheeler argues that the ALJ's credibility finding is erroneous because she failed to identify inconsistencies in the record. Doc. No. 18 at 9. Wheeler contends that any indications of a normal gait are belied by the fact she used a cane and, in any event, do not establish that her loss of sensation was not disabling. *Id.* She highlights portions of the record that indicate she experienced weakness during the relevant time period and claims that weakness in her legs is the relevant impairment, not weakness in her hands. *Id.* She also argues that the lack of a prescription for a walker or cane is irrelevant because she still needed to use a cane and walker to get around. *Id.* at 10.

A claimant's credibility is primarily for the ALJ to decide, but the decision must be based on substantial evidence. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). The ALJ must make "express credibility determinations" and articulate the inconsistencies in the record that caused her to reject the plaintiff's complaints. *Id.* When evaluating a claimant's subjective complaints, the ALJ must consider objective medical evidence as well as the *Polaski* factors, which include "(i) [the] claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) dosage, effectiveness, and side effects of medication; and (v) functional restrictions." *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (*citing Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ may not discount a claimant's allegations solely because medical evidence does not fully support them. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). However, the ALJ may discount the claimant's subjective complaints if there are inconsistencies in the record as a whole. *Guilliams*, 393 F.3d at 801. The court should defer to the ALJ's credibility finding if the ALJ explicitly discredits the claimant's testimony and gives good reasons for doing

so. *Buckner*, 646 F.3d at 558 (citing *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010)).

The ALJ found that Wheeler's "medically determinable impairments could reasonably be expected to cause some but not all the alleged symptoms and severity." AR 96. She stated that Wheeler's complaints were inconsistent with the medical evidence of record. AR 103. There were no treating source opinions regarding her work level and no doctor-imposed work restrictions. *Id.* The ALJ also noted Wheeler's Personal Pain/Fatigue Questionnaire and found there was conflicting information regarding Wheeler's daily activities. AR 104–05.

Wheeler contests the credibility finding on the basis that she needs to use a cane and experiences weakness and numbness in her legs. The record consistently documents her use of a cane for mobility. But whether or not her cane was prescribed by a physician is irrelevant because the ALJ did not rely on the lack of a prescription when making her credibility finding. There is no dispute that Wheeler experienced numbness, fatigue and lack of sensation after she received an epidural. In fact, the ALJ accounted for fatigue and loss of sensation in the RFC. However, the ALJ did not find Wheeler's allegations as to the severity of the symptoms credible because the treatment notes documented continued improvement in her mobility. Wheeler was able to complete daily tasks such as grocery shopping, cooking, light cleaning, taking care of her children and pets and doing laundry. AR 237–38, 253. She does not experience pain, only some numbness and fatigue. AR 232. Treatment notes indicated she eventually achieved a normal range of motion, was able to walk and use stairs independently, could ambulate with a normal gait and had improved muscle strength. AR 625, 635, 649, 788.

The ALJ identified these inconsistencies in the record even if she did not explicitly list the *Polaski* factors. AR 96, 104–05. If the ALJ gives good reasons for discrediting some testimony, the court is bound by that finding unless it is not supported by substantial evidence on the record as a whole. *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992). The above-listed inconsistencies are "good reasons" for discounting Wheeler's

subjective complaints. If, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning*, 958 F.2d at 822). Therefore, I defer to the ALJ's credibility determination.

## C. Remand

Wheeler argues that new evidence of a CIDP diagnosis is material to her complaint because it explains "many or all" of the symptoms present during the relevant time period. Doc. No. 18 at 11. She contends that even though the new evidence does not provide any work-related limitations or definitively establish her disability, the new evidence is sufficient to require a remand. *Id.* at 11–12. She argues there is a reasonable likelihood that the ALJ would reach a different conclusion based on the new evidence. *Id.* at 12–13.

Remand to consider additional medical evidence is authorized by sentence six of 42 U.S.C. § 405(g). It is appropriate only when the new evidence is material and there is good cause for failing to include the evidence in the record in an earlier proceeding. *Hepp v. Astrue*, 511 F.3d 798, 808 (8th Cir. 2008). A claimant has good cause when the new evidence did not exist at the time of the hearing. *See Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Evidence is material so long as it is "non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied." *Hepp*, 511 F.3d at 808 (quoting *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997). There must also be a reasonable likelihood that the new evidence would have changed the ALJ's decision. *Krogmeier*, 294 F.3d at 1025.

The new evidence at issue here is a series of treatment notes from May 2016 to October 2016. Doc. No. 12-1. There is good cause for not presenting this evidence at

12

the administrative hearing because the notes did not exist at the time. Therefore, the key question is whether this evidence is material. The Government, in its brief to Judge Williams, argued that the evidence is not material because it addresses Wheeler's condition at least three months after the ALJ issued her decision. Doc. No. 14 at 12. The Government also argues that even if the evidence did address the relevant time period, it would not have changed the ALJ's decision. *Id.* Judge Williams found that the evidence does relate to the relevant time period, but is not material because there is nothing in the new evidence that supports a different conclusion. Doc. No. 17 at 18.

I find that only some of the new evidence is relevant to Wheeler's condition during the time period for which benefits were denied. I agree with Judge Williams that the portions of the treatment notes discussing Wheeler's diagnosis of CIDP relates to the relevant time period. Various physicians discussed the medical history that was part of the ALJ's record and suggested that Wheeler's past symptoms were caused by CIDP. Doc. No. 12-1 at 1, 5, 13; *see Geigle v. Sullivan*, 961 F.2d 1395, 1397 (8th Cir. 1992) (finding that new test results were material because they provided "medically objective support" for the claimant's alleged impairments and were probative to her condition before and at the time of the hearing). However, the portions of the new evidence discussing the symptoms Wheeler was experiencing after February 2016 are not material. Doc. No. 12-1 at 5–6, 9, 12–13, 19–20; *See Miller v. Astrue*, No. C11-3030-PAZ, 2012 WL 1155665, at *9 (N.D. Iowa Apr. 5, 2012) ("Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for benefits."). Therefore, I will consider only whether it is reasonably likely that the ALJ would change her decision based on the CIDP diagnosis.

According to Dr. David Bouda, CIDP is associated with muscle weakness and sensory deprivation. Doc. No. 12-1 at 13. The ALJ considered these symptoms in her opinion, but the new diagnosis provides a medical basis for the symptoms that other test results did not. The ALJ considered the fact that CT scans, MRI scans and EMG testing

showed normal results and stated that the lack of objective physical findings was one factor in her analysis. AR 97, 98, 102, 103–04. The ALJ also pointed out that a neurologist, Dr. Franco, suggested the symptoms may be a result of a "functional disorder," meaning they are of non-physical origin. AR 101, 104. The CIDP diagnosis could affect that analysis.

However, I do not find that the additional relevant evidence is reasonably likely to change the ALJ's ultimate decision. First, even the new treatment notes do not conclusively diagnose Wheeler with CIDP. *See* Doc. No. 12-1 at 1 (CIDP is a presumptive diagnosis), 5 (the physician feels that Wheeler *may* have CIDP), 14 (stating that the medical personnel are not sure what the patient has), 17 (stating the "etiology of her neuropathy is a mystery at this point"). Second, the ALJ also relied on the inconsistencies between Wheeler's complaints and the detailed treatment notes discussing her daily activities and how her symptoms affected her daily functioning. AR 104–05. The CIDP diagnosis contains no additional information as to how the symptoms Wheeler experienced affected her ability to move and perform daily tasks. AR 96–103. Therefore, I find no reason to remand this matter to allow consideration of the new evidence.

## V.  CONCLUSION

For the reasons set forth herein:

1. Plaintiff's objections (Doc. No. 18) to the Report and Recommendation (Doc. No. 17) are **overruled**.

2. I **accept** the Report and Recommendation without modification. See 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Williams' recommendation:

    a. The Commissioner's determination that Wheeler was not disabled is **affirmed**; and

b.  Judgment shall enter against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 17th day of May, 2018.

_____
Leonard T. Strand, Chief Judge